UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                          Case No. 2:11-cr-21
                                                          HON. ROBERT HOLMES BELL

AARON TIMOTHY VANZILE,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

Defendant Aaron Timothy VanZile is charged in a three count indictment with Aggravated Sexual Abuse of a Child Under 12 and Abusive Sexual Contact With a Child Under 12, 18 U.S.C. §§ 2241(c), 2246(2)(C), 1151 and 1153. Defendant was arraigned on May 13, 2011, and was detained pending further proceedings. Pursuant to Court order, a forensics evaluation was conducted and it has been determined that defendant is competent to proceed to trial. On January 27, 2012, defendant filed a motion to suppress statements he made on May 5, 2011. The matter has been fully briefed and a hearing was held before the undersigned on March 12, 2012. The parties were given an opportunity to file supplemental briefs, but apparently concluded that supplemental briefing was not necessary.

Testifying at the hearing were Richard Burke, Captain of the Lac Vieux Desert Police Department, and Jay Johnston, Special Agent with the Federal Bureau of Investigation. Defendant did not testify. The facts establish that in the morning of May 5, 2011, defendant was brought to the Lac Vieux Desert Tribal Police Department by his sister, whereupon he was arrested for assault upon

a nine-year-old child. At approximately 9:00 a.m., defendant was administered a PBT and registered a blood alcohol content of .22 percent. Thereafter, Captain Burke indicated that he advised defendant of his Miranda rights and thereafter conducted an interview. Defendant did not make any incriminating statements and his responses to Captain Burke's questions are not the subject of this motion to suppress. The testimony indicated that after Captain Burke's questioning, defendant slept in his cell.

Late in the afternoon of May 5, 2011, at approximately 4:30 p.m. CST, Special Agent Jay Johnston interviewed defendant. Agent Johnston advised defendant of his Miranda rights and defendant executed a Lac Vieux Desert Tribal Police statement form, indicating that he had been advised of his rights. See Government's Exhibit 1. At or about the time of this interview in the late afternoon of May 5, 2011, defendant was administered another PBT, which registered a .093 percent blood alcohol content. During the interview with Special Agent Johnson, defendant made incriminating statements which are the subject of defendant's motion to suppress. According to defendant, the statements made to Special Agent Johnston were involuntary and the product of coercive police activity. There is apparently no dispute that defendant was read his Miranda rights prior to making any incriminating statements. The question presented is whether under the totality of the circumstances defendant's statements were the product of police coercion.[1] As the defendant has identified in his brief filed in support of the motion to suppress, the Court is required to determine whether under the totality of the circumstances defendant's statements were voluntary, or in the alternative, the product of coercive police activity. *See Colorado v. Conley*, 479 U.S. 157,

---

[1] Defendant does not argue that his decision to answer Special Agent Johnston's questions was not knowingly made. No facts were presented to support such an argument. In fact, Special Agent Johnston's testimony establishes that defendant understood his rights and was eager to talk.

167 (1986).  As Circuit Judge Clay explained in *Givens v. Yukins*, 238 F.3d 40, 2000 WL 1828484 (6th Cir. Dec. 5, 2000):

> We review whether a waiver of *Miranda* rights was voluntary, knowing, and intelligent under the totality of the circumstances. *See Moran v. Burbine,* 475 U.S. 412, 421 (1986). The Supreme Court has held that a waiver of *Miranda* rights was voluntary where "the police gave full 'Miranda warnings' . . . at the very outset of each interrogation, subjected [petitioner] to only a brief period of initial questioning, and suspended questioning entirely for a significant period before beginning the interrogation that led to [petitioner's] incriminating statement." *Michigan v. Mosley*, 423 U.S. 96, 107 (1975).
>
> Further, reasoning that "[t]he sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion," the Supreme Court has held that the admission of a confession to murder by a chronic schizophrenic, in a psychotic state, absent state coercion, did not violate the Constitution. *Colorado v. Connelly,* 479 U.S. 157, 170 (1986). In reaching this decision, the Supreme Court focused on state perceptions of the mentally ill confessor. To one officer, "respondent appeared to understand fully the nature of his acts." *Id.* at 160. Another detective "perceived no indication whatsoever that respondent was suffering from any kind of mental illness." *Id.*

*Id.* at *9.

> As Judge Moore explained in *Garner v. Mitchell*, 557 F.3d 257 (6th Cir. 2009):
>
> Whether a suspect's waiver of *Miranda* rights is "a knowing and intelligent relinquishment or abandonment of a known right or privilege" is "a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Edwards,* 451 U.S. at 482, 101 S.Ct. 1880 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). A court must examine the "totality of the circumstances" to determine whether a suspect's waiver was knowing and intelligent, including inquiries into the suspect's "age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Michael C.,* 442 U.S. at 725, 99 S.Ct. 2560. "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver

> of the Fifth Amendment privilege," but does require "that a suspect know[ ] that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Spring,* 479 U.S. at 574, 107 S.Ct. 851; *see also Burbine,* 475 U.S. at 421, 106 S.Ct. 1135 ("[T]he waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.").

*Id.* at 274-275.

The facts as testified to by Captain Burke and Special Agent Johnston provide no support for defendant's claim that his statements were the result of coercive police activity. Defendant was under the influence of alcohol when he was arrested on the morning of May 5, 2011. Defendant was allowed to sleep it off and his blood alcohol content had diminished significantly by the time he was interviewed by Special Agent Johnston. The facts do not establish that Special Agent Johnston used any coercive activity in securing the statements from defendant.

In *United States v. Tellefsen*, No. 11-CR-43, 2011 WL 4442539 (E.D. Wis. June 2, 2011), United States Magistrate Judge Joseph explained:

> When the interrogating officers should reasonably have known that a suspect was under the influence of drugs or alcohol, a lesser quantum of coercion may be sufficient to call into question the voluntariness of the confession. *Carson,* 582 F.3d at 834. However, there must still be police coercion. *Id.* at 833 ("A finding that the police engaged in coercive activity is an essential predicate to a finding that a suspect's confession was involuntary.") For the intoxication to be relevant to the voluntariness inquiry, the intoxication must have made the mental or physical coercion by the police "more effective." *United States v. Chrismon,* 965 F.2d 1465, 1469 (7th Cir.1992). A court determines whether police coerced a suspect by looking at such things as the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention; the nature of the interrogation; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep. *Carson,* 582 F.3d at 833.
>
> In this case, the evidence shows that Tellefsen's decision to waive his constitutional rights was voluntarily made. Prior to beginning an

> interview that lasted approximately 45 minutes, Officer Herbst read Tellefsen his *Miranda* rights. (Tr. at 66–67, Exh. 2, Exh. 3.) Officer Herbst did not have his weapon drawn during the interrogation. No threats or promises were made to Tellefsen to get him to waive his constitutional rights. Officer Herbst spoke in a friendly and low-key tone. Tellefsen was calm and cooperative. At one point when Officer Herbst asked if he made any calls, Tellefsen offered to let him search his phone, without Officer Herbst making such a request. (Exh. 3.) Further, when Officer Herbst mentioned the West Allis police may want to talk to him, Tellefsen responded that he had no problem speaking with them. (Exh. 3.)
>
> Moreover, Tellefsen's intoxication does not automatically render his waiver involuntary. *United States v. Toro,* 359 F.3d 879, 885 (7th Cir.2004) (finding a statement made by an intoxicated person in custody is not rendered involuntary simply by the person's inebriated state). As previously discussed, there is a difference between intoxication, measured by blood alcohol level, and impairment, measured by capacity to function. Here, despite Tellefsen's high blood alcohol level, the evidence establishes that Tellefsen was lucid when the *Miranda* warnings were read to him. Officer Herbst testified after reading Tellefsen his *Miranda* rights, Tellefsen stated he understood his rights and appeared to understand them. (Tr. at 67.) Tellefsen recalled having his rights read to him. (Tr. at 84.) Tellefsen was told if he made a statement it could be used against him in court. (Exh. 2; Exh. 3.) Tellefsen immediately stated that he understood his rights. (Exh. 3 .) The totality of the evidence shows no duress or coercion used by Officer Herbst to induce the defendant to waive his *Miranda* rights. Absent evidence that Tellefsen's will was overborne and his capacity for self-determination critically impaired because of coercive police conduct, the court concludes that Tellefsen's decision to waive his Fifth Amendment privilege was voluntary.

*Id*. at *11-12.

Special Agent Johnston testified that the interview lasted approximately 45 minutes and that defendant did not appear intoxicated and was lucid. Special Agent Johnston indicated defendant was eager to talk to him. There is no evidence that defendant was denied the use of a bathroom or denied food or water. At no time did defendant attempt to terminate the interview and there is nothing to suggest coercive activity by law enforcement officers.

Accordingly, it is respectfully recommended that defendant's Motion to Suppress Statements (Docket #29) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated: April 5, 2012